Harold E. Koreman, J.
This is a proceeding, pursuant to article 78 of the Civil Practice Law and Rules, to review a determination of the State University Construction Fund and its trustees (hereinafter called Fund), awarding the contract for the construction of the project known as Academic Group, Part I, SUCF 01-02, to Basic Construction Company (hereinafter called Basic). The petitioner also seeks an order temporarily enjoining the respondents from negotiating or entering into any agreement or from proceeding in any manner with the planning, design or construction of the Academic Group, Part I, pending the determination of this proceeding.
In view of the determination reached herein, it is not necessary to pass upon the application for a temporary injunction.
*900 This controversy arises out of the awarding of the contract for the construction of buildings and facilities for the State University of New York. Petitioner alleges that the selection by the Fund of Basic as the over-all low bidder, and the awarding of the contract to Basic was the result of arbitrary and capricious conduct on the part of the Fund. Petitioner seeks to have the contract which was awarded to Basic annulled, a direction that the Fund award the contract to it as the low bidder, or, in the alternative, an order directing the rejection of all bids for the reason that the awarding of the contract did not constitute a public letting within the meaning of subdivision 8 of section 376 of the Education Law.
In support of its position, petitioner alleges that it, along with others, including Basic, submitted sealed bids pursuant to certain information and itemized proposals furnished by the Fund. In addition to submitting a base bid, each bidder was required to submit bids on 26 alternates, and on each alternate, the bidders were required to indicate how much they would add to or deduct from their base bids for the addition, deletion or substitution of certain work or materials, called for in the specifications. Petitioner also alleges that the lowest bid would be determined by adding to or deducting from the lump sum bid (the base bid) the additive or deductive alternates, if any, the Fund elects to accept after the opening of the proposals.
When the sealed proposals were opened, it was found that petitioner submitted the lowest lump sum or base bid of $25,740,000 and that the lump sum or base bid of Basic, the next lowest bidder, was in the amount of $25,800,000. However, the selection of alternates by the Fund resulted in a total bid in the amount of $25,649,700 for petitioner and a total bid in the amount of $25,645,000 for Basic. Thus, Basic became the lowest bidder. Based upon the selection of alternates and upon a review of the respective qualifications of the petitioner and of Basic, the trustees of the Fund authorized award of the contract to Basic, and pursuant to such authority the Fund and Basic entered into the contract.
Petitioner contends that it was the de jure as well as the de facto low bidder, and was denied the award of the contract because of the arbitrary and capricious conduct of the Fund in the selection of alternates which resulted in Basic becoming the low bidder. In this connection, petitioner contends that as between it and Basic, petitioner was low bidder on 14 of the 26 alternates; that Basic was low on 11, and that they tied on the 1 remaining alternate, but that the Fund made its selection of alternates in a manner which would enable Basic’s over *901 all bid to become lower than petitioner’s and which would enable Basic to overcome petitioner’s advantage from its lower base bid. Petitioner alleges that there was no rational basis or justification for the alternates selected by the Fund and, in substance, disagrees with the Fund in the wisdom of the choice of the specific alternates selected.
Petitioner places special emphasis on its objection to the selection of Alternate No. 18 because, it contends, if that alternate had not been selected, it would have been the over-all low bidder. Without setting forth the requirements or specifications called for by Alternate No. 18, it is noted that in support of its contention that the selection of that alternate was improper, petitioner has submitted an affidavit of an expert who expressed the opinion that the selection of that particular alternate could not be justified and was not reasonable from an architectural or engineering standpoint.
Petitioner also maintains that the rejection by the Fund of Alternate No. 7 was improper and unwise and was arbitrary and capricious, and, finally, that if the Fund had selected all of its alternates it still would have been the low bidder. Petitioner also submitted an affidavit of its vice-president to support the allegations of its petition.
As an alternative to declaring it the low bidder, petitioner seeks a direction that all bids be rejected, on the ground that the inclusion of 26 alternates in the proposals violated subdivision 8 of section 376 of the Education Law, in that it constituted a method of awarding a contract which was not a “ public letting ’ ’. The claim is that using such a number of alternates gives the letting agency such leeway in selecting various combinations of alternates that it can determine a low bidder by such selection even though another bidder submitted a lower base bid.
The respondents have filed answers to the petition which contain two separate and affirmative defenses. First, that the petition fails to allege facts entitling petitioner to any relief and, secondly, that petitioner did not meet the qualifications required to perform the work and was not responsible and reliable as required by section 376 (subd. 8, par. b) of the Education Law. Respondents also filed objections in point of law pursuant to subdivision (f) of section 7804 of the Civil Practice Law and Rules, and have cross-moved for an order dismissing the petition.
Petitioner, pursuant to subdivision (b) of rule 3211 of the Civil Practice Law and Rules, has replied to the affirmative *902 defenses and raises an objection in point of law to the new matter contained in them.
With respect to the new matter contained in the second affirmative defense, petitioner maintains that the issue of petitioner’s qualifications is irrelevant, and that such an affirmative defense fails to state a defense as a matter of law. Petitioner maintains that should the court determine that the Fund acted arbitrarily and capriciously in the selection of alternates and petitioner is found to be the over-all low bidder, then the issue of petitioner’s qualifications can be formally determined by the Fund on the basis of facts as they exist at that time.
On the state of the pleadings, there is thus presented for the court’s determination whether the allegations of the petition are sufficient in law to show that the Fund acted in an arbitrary and capricious manner so as to entitle petitioner to a plenary trial of any issues of fact.
From an analysis of the facts, as set forth in the pleadings and accompanying affidavits and exhibits, it appears that petitioner bases this application on the manner or method by which the alternates were selected. The bare allegation is made that this was done in an arbitrary or capricious manner; that it was done in a manner not in the best interests of the State University and the public, and in a manner that constituted an abuse of discretion.
Such allegations are of a conclusory nature. They are made upon information and belief, and the affidavits submitted to support these allegations fail to set forth any facts to establish the conclusions alleged.
It is pertinent to note here that the State University Construction Fund, created by chapter 251 of the Laws of 1962 (Education Law, art. 8-A) is a corporate governmental agency constituting a public benefit corporation (Education Law, § 371). The purposes of the Fund are ‘ ‘ to assure that the academic, dormitories and other facilities required by the State University of New York are ready for instruction purposes when needed and when scheduled under the master plan.” (See, also, Education Law, § 372.)
Among the Fund’s general powers and duties are “ to make and execute contracts, lease agreements, and all other instruments necessary or convenient for the exercise of its corporate powers and the fulfillment of its corporate purposes” {id., § 373, subd. 12).
In section 376 (subd. 8, par. b) of the Education Law, it is provided: ‘ ‘ The letting agency shall not award any contract after public bidding except to the lowest bidder who in its *903 opinion is qualified to perform the work required and is responsible and reliable. The letting agency may, however, reject any or all bids, again advertise for bids, or waive any informality in a bid if it believes that the public interest will be promoted thereby
It is clear from the foregoing provision that the authority to determine who is the lowest responsible bidder is vested in the trustees of the Fund. Acting pursuant to its authority, the trustees prepared information for bidders in connection with the letting of the contract for the construction of the academic group which provided, in part, as follows: “ The award of the Contract shall be made to the bidder submitting the lowest bid who, in the opinion of the Fund, is qualified to perform the work involved and is responsible and reliable. The Fund shall determine the lowest bid by adding to, or deducting from, the lump sum bid of the bidders the additive or deductive alternates, if any, the Fund elects to accept after the opening of the proposals ”. It also appears that, while the petitioner alleges that the alternates were selected in a manner not in the best interests of the State University or of the public, the State University in fact officially notified the Fund to reject all alternates except those finally selected by the Fund.
Having been unsuccessful in its attempt to submit the over-all low bid, petitioner now states that if the alternates had been selected in a different manner, it (petitioner) would have been the lowest bidder. The difficulty with this position is that the selection of alternates was a matter entirely within the province and authority of the Fund as conferred by law. It is neither alleged nor has there been any showing that the Fund failed to discharge their legal duty or responsibility, nor has it been alleged or demonstrated that the Fund acted illegally, fraudulently, collusively, corruptly or in bad faith.
Thus, petitioner has not demonstrated that the Fund acted arbitrarily or capriciously in determining that Basie was the low bidder. This conclusion is reached without, at this time, considering petitioner’s responsibility and reliability. “ Reasonable men may reasonably differ, but the agency or person saddled with the responsibility of decision, absent fraud collusion, illegality or action clearly arbitrary and without foundation, should have its decisions upheld ” (Matter of Kayfield Constr. Corp. v. Morris, 15 A D 2d 373, 379).
Petitioner urges that the question of whether any rational basis existed for the selection or rejection of specific alternates is placed squarely in issue by the pleadings and affidavits, and, therefore, the logic, the rationale or wisdom of such choice raises *904 a triable issue. Here again, it must be noted that the allegations of the petition are of a conelusory nature, basing, as it does, the contention of arbitrariness and caprice on the determinations of the Fund when it was acting within the authority specifically conferred upon it by an act of the Legislature. The answer, affidavits and objections in point of law filed by respondents, do not raise triable issues of fact, but do raise an issue of the legal sufficiency of the petition. Assuming the truth of the facts alleged in the petition as to the submission of bids and the awarding of the contract, petitioner has failed to demonstrate any right to review the determination of the Fund.
In addition, it has not been shown that there is any basis for petitioner’s conclusion that the inclusion of 26 alternates violated the provisions of subdivision 8 of section 376 of the Education Law and did not constitute a public letting.
In the final analysis, the basis of this application is that the method employed by the Fund in awarding the contract is not the one that should have been employed. In fact, petitioner suggests certain methods (i.e., selection of certain alternates and rejection of others) by which it could have been determined to be the lowest over-all bidder. But, to furnish a basis for judicial intervention, it must be demonstrated that the method used was without authority of law and, therefore, arbitrary and capricious. This the petitioner has not done, but rather it appears that the Fund acted in a manner clearly within the authority vested in it by article 8-A of the Education Law.
It is not the function of judicial review in an article 78 proceeding to weigh the facts de novo and substitute the court’s judgment for that of the body reviewed, but only to determine if the action sought to be reviewed was authorized and can be supported on any reasonable basis (Matter of Kayfield Constr. Corp. v. Morris, 15 A D 2d 373, supra). Moreover, it has been held repeatedly that a presumption of regularity attends the action of the letting agency in such matters, and it is incumbent upon the petitioner to overcome that presumption and establish the action to have been without reasonable foundation. “ The issue is not whether the determination of the town board was wise, but whether there was a reasonable and plausible basis for such determination ” (Matter of Kaelber v. Sahm, 281 App. Div. 980, affd. 305 N. Y. 858; see, also, Matter of Graziani v. Rohan, 10 A D 2d 154, affd. 8 N Y 2d 967; Matter of Kayfield Constr. Corp. v. Morris, supra).
Similarly, it has been held in reviewing the propriety of selection of alternates, that so long as the letting agency was entrusted with the power of awarding the contract to the person making *905 the most favorable proposal, the presumption of official integrity would attach to the action of that body, and something more would be necessary to impugn that action than mere proof that there was a lower bid than the one accepted (Gilmore v. City of Utica, 131 N. Y. 26; Matter of Bana Elec. Corp. v. Board of Educ., 22 Misc 2d 956; Matter of Cestone v. Evans, 281 App. Div. 359; Matter of Premier Elec. Installation Co. v. Board of Educ., 20 Misc 2d 286).
While the petitioner alleges that the Fund was arbitrary, capricious and acted in abuse of its discretion in the selection of alternates and in the final award of the contract, there is an absence of any factual allegations to substantiate that they did so act. Nor have any facts been set forth to overcome the presumption that the Fund acted properly, or which would furnish the basis for judicial intervention.
As noted hereinabove, the petitioner maintains that the Fund has not rejected its bid as not qualified to perform the work and that, therefore, the qualifications of petitioner will have no relevancy until the court has ruled upon its contention respecting the selection of alternates and a determination made that petitioner and not Basic was the over-all low bidder. Apparently, the petitioner contends that it, and any other bidder similarly situated, is entitled to a formal hearing before the letting agency at which qualifications, responsibility and reliability are formally determined. Otherwise, a bidder who is rejected as unqualified, etc., would not be in a position to seek a review of the rejection. Such contention is without merit. The petitioner has pointed out none and independent research has failed to discover any requirement that the Fund was required to hold a hearing before determining that petitioner was not a qualified, responsible and reliable bidder. As a matter of fact, the authorities are to the contrary. (See Matter of Haskell-Gilroy, Inc. v. Young, 20 Misc 2d 294, affd. 10 A D 2d 629; Matter of Albro Contr. Corp. v. Department of Public Works of State of N. Y., 13 Misc 2d 846; Matter of Daniel J. Rice, Inc. v. Board of Educ. of City of N. Y., 15 A D 2d 958.)
As to the contention that the Fund did not elect to consider the qualifications, responsibility and reliability of the bidders, the letter from the Fund returning the certified check which petitioner had submitted with its bid is sufficient answer. The last paragraph of the letter, which is attached to the petition as an exhibit, reads as follows: “Based upon the foregoing and based uyon a review of the qualifications of the bidders, we have awarded a contract in the amount of $25,645,000.00 to the Basic Construction Company.” (Italics mine.)
*906 In view of the information before the Fund, this court cannot say that its determination that petitioner was not a qualified, responsible and reliable bidder was clearly arbitrary and without foundation.
For the reasons set forth hereinabove, the petition is dismissed.